May it please the Court. Good morning, Your Honors. Ben Wiesinger on behalf of the petitioner, Carlos Madrid. While we don't need to remind the Court, torture is defined as cruel and inhumane punishment not sanctioned by law. And that's exactly what happened to Mr. Madrid. He was detained by police in Mexico City. He was forced to strip naked. He was beaten on the hands and the feet with a police baton and held without charges for 5 days. There is no reasonable argument that this did not constitute torture. Did the BIA hold to that? It didn't? The BIA called this abuse. Oh, I see. I see. You're now arguing about the Convention Against Torture issue. That's correct, Your Honor. All right. It was the strongest issue, I was told. And by calling it abuse, the BIA completely minimized what happened from a legal perspective, because they concluded that it wasn't torture, but that it wasn't likely to happen to him on his return. Well, they also concluded that. What I would say is that their characterization of what happened to him in police custody as abuse is disingenuous and is an error as a matter of law, because the regulations and matter of JE specify that a past act of torture is the first and most indicative and most important factor for determining whether torture is likely to occur in the future. By calling it abuse, they are skipping that first step. They're saying, well, yes, something bad happened to him, but let's look at the future. No, you're not allowed to do that. I'm sorry. The regulations have a very strict step-by-step for Convention Against Torture protections. I'm not sure I'm understanding your characterization of what the Board held. The Board said that he recalled horrific mistreatment in Mexico. And so it doesn't seem to me they're minimizing what happened. They're saying that he hasn't established that it's more likely than not that he would be tortured in Mexico with the acquiescence of the public officials. So they acknowledge that he had at least one incident at the hands of law enforcement. They don't doubt that it happened, but it happened over 10 years ago, and it doesn't necessarily indicate that public officials will act the same way, and so on. I don't even know where is the language that you're talking about. The second page of their or the third page of their opinion, AR-5, we acknowledge he's been subject to at least one incident of, quote, direct abuse. Okay. At the hands of law enforcement. Correct. He also acknowledges that he's been tortured by private people. Correct, Your Honor. And the Court's precedent would suggest that if he had only been raped, if he had been raped multiple times by private parties, then he wouldn't meet his burden of proof under the Convention Against Torture. While I would respectfully disagree, but that's the Court's precedent, here we have something different. We have direct police torture while in police custody. Is that true, that that is sufficient? What do you do with the Kumar case? I'm sorry, Your Honor? What do you do with the Kumar case? I don't understand. Kumar? I assume that you're aware of the Kumar case? A-U-M-A-R? I recognize the name, but you're no, I'm not familiar with it. Of which there are many Kumar cases, I assume. What I'm specifically referring to is some of the recent decisions specifically addressing Convention Against Torture claims from Mexico, Your Honor, in which the perceptions in Mexico have generally softened and you know, I don't know if that's true. I thought you were talking about whether or not he was tortured when he went in. Just as he goes in, in the Kumar case, that isn't sufficient for what we call torture. They do some bad things in jails. And I just, you just said, if I understood your argument, that because the police used some batons on him, that that automatically makes it torture. And I just wonder how you get around Kumar. We've had several cases where that's happened. We haven't called it torture. It's bad conduct. Well, Your Honor, I would, while I apologize that I'm not as familiar as there ought to be with Kumar v. Holder, I'm looking at the strict definition of torture in the case of Holder, generally considered to be dispositive for what constitutes torture. And that is Kumar v. Gonzalez. Kumar v. Gonzalez. I apologize, Your Honor. Is physical abuse to the point where he's got permanent scars on his hands and his feet. So does that end the discussion? I want to go back to you've pointed to this language on page 3. What's wrong with the language on page 3? And, of course, we have to consider it in context of pages 1 and 2 as well, right? We're going to look at the whole opinion. Yes, sure. When you call torture abuse, you minimize its effect. You minimize the analysis of the likelihood it's going to happen again in the future. Well, whether you call it abuse or torture, the issue, as you framed it, is whether it's likely to happen in the future. Yes, Your Honor. And that was the basis for their decision, however you want to call it. And to address your point, Your Honor, my client is still an effeminate gay man. That hasn't changed. He still bears significant visible scars where you look at him, you wonder why, what happened to you? He had surgery on his face after he was beaten with gloves with spikes on them and in a coma for three months. So he's visible. Does that mean it's likely to happen in the future? Yes, it does. Because he can't just disappear into society. He can't blend in. He is what is he wearing a scarlet letter that says this is a result of abuse or torture because I'm a homosexual? He is socially visible. He is effeminate. And he's got these mental health problems that if it's not controlled by medication, he acts irrationally. Can you at least briefly address the particularly serious crime question? I can, Your Honor. The biggest problem that we have is that neither the immigration judge nor the board addressed that, the fact that he was possibly having a seizure during the time when this incident with the poor dog happened. He said that that's what happened. He was feeling bad that day. But also, my understanding, he was convicted of a crime that had a bunch of subcategories, including killing, and it said and killing. Correct. And the case law generally is that when something is charged that way, it doesn't mean you're found guilty. You're not guilty of every one of them. You could just be guilty of one of them, right? In other words, I don't know that the conviction proves that he killed the dog. Now, there was a conviction with regard to the knife. That was the aggravating factor, Your Honor. Right. So he was found to have had a knife, which he denies, I guess. Yes, sir. Yes, ma'am. And the knife was involved with the mutilating and killing of the dog. That's correct, Your Honor. That was at least was alleged by the – in the complaint, and that's what he pled guilty to. He disputes that. His recollection of the events is different. If he was having a seizure, how does he even recall the events? That is a great question, Your Honor. I try to ask great questions. The record, I would say, is unclear. I wish we had a police report, which we don't, unfortunately. What I can say is from the point of view of the court. But we do have what you've noted. We have his prior criminal record, the finding of the court, his plea of guilty to that charge. Yes. And that cuts against him, certainly. The problem is that – No pun intended? The problem is, is that this Court's precedent on PSCs, including the recent Alfonso's case, states that we have to consider all the facts, the totality of the circumstances, specifically the totality of the circumstances. The board and the judges didn't do that. They said he was a knife, poor dog, that's a PSC. And that analysis – What else should they have considered? What else was there? His testimony. Well, they did. And his – They did. They didn't believe him. And the fact that he has mental health problems, the fact that he says he was having a seizure that day and may not recall exactly what happened, that says to me that he didn't intend to hurt this poor animal. And that lack of intent is what brings us out of the realm of a PSC. But this Court can't engage in that kind of fact-finding. Unfortunately, the Court could only say, Judge and board, you forgot to analyze this part of the issue. So I'd like to reserve any time I have left for rebuttal. Thank you very much. Good morning, Your Honors, and may it please the Court. I'm Fred Sheffield on behalf of the Attorney General. We're asking that you deny this petition for review because Petitioner, first of all, has not shown compelling evidence that he is more likely than not to be tortured in Mexico with the acquiescence of the Mexican government. We're also asking you to deny the petition with respect to the particularly serious crime determination. With the Court's permission, I want to speak first briefly about the jurisdictional issue and the standard of view with respect to the particularly serious crime issue. Under ordinary circumstances, this Court reviews the particularly serious crime determination for abuse of discretion. In this situation, however, we have an alien who was found removable as a criminal alien under 1182a2. And for that reason, under the jurisdictional limitations at 1252a2c, the court would only review this particularly serious crime determination to the extent that Petitioner raises a colorable legal question or a constitutional question. Now, I think it's a little bit difficult, based on Petitioner's arguments and the arguments in his brief, to determine whether he's making an abuse of discretion argument or a legal argument. His argument is really essentially that the Board didn't consider the totality of the circumstances. But either way, whether he's making the abuse of discretion argument or the legal – failed to follow the legal standards argument, I don't know there's – that there's much to his argument. The Board's particularly serious crime precedent – Is there any precedent for – I mean, leaving aside exactly what the facts are here – for a particularly serious crime involving – that doesn't involve a person and that doesn't – I mean, there's some language saying, well, maybe you can cover a property crime. I'm not sure it's ever covered a property crime. It has, actually. I mean, this Court's decision just recently in Arbid, which is at 700 Federal 3rd 379. That's a decision which involved a large mail fraud in – Okay. But this isn't that. No. I mean, I – it just seems to me that you're – that the Board has continually been diluting the notion of particularly serious crime, and this takes it one step further. I mean, it seems like a horrible thing, depending exactly what you think the facts are, but nonetheless, it's still an animal. It's not a person, and it's not a whole lot of money, and it – I mean, it seems to call that a particularly serious crime is to play with language. Well, some of the touch – I think it's important to look at some of the touch. Not just a serious crime, but a particularly serious crime. It's a particularly – I think that the important things to remember are when determining whether a crime is particularly serious under the statute, we look to things like danger. We look to violent offenses. In his concurrence in Delgado, Judge Reinhart discussed particularly serious crimes in depth and noted that one of the – that was a DUI as a particularly serious crime case, and Judge Reinhart stressed that in the past. I'm sure in every instance we were talking about people. Well, I don't know that – I mean, violence is something that generally I think – what's the touchstone of violence? Arguably, it's things that are against living creatures. Granted, I don't think we would call it a violent offense if someone took a baseball bat to property or something like that. But I don't think there's any question that what Petitia in this case pled guilty to, skinning, torturing, mutilating a dog. I mean, not to be graphic, but people killing animals every day for, you know, good reasons. This was for a very bad reason. But it's still – we don't put killing animals in the same category – even violently in the same category with killing people. Well, I would note that there is an exception in the California statute to which Petitia pled guilty such that – I mean, the California statute does exclude instances of killing animals for things like pest control, things like hunting. So this is not – there's no question that this statute might be encompassing things that aren't particularly violent and particularly malicious. Well, killing – I mean, many people think that hunters are pretty violent. But it's not a crime, and it certainly isn't a particularly serious crime. No, and that's really not at issue in this case because we didn't have someone who was out there hunting. We had someone who took a dog. So help me out with what – following up on my colleague's question. What is a particularly serious crime? If – does it have to be a person involved? What if there's an arsonist? Who sets fire to buildings? Whether that arson puts or doesn't put people in danger, is that a – or could it be a particularly serious crime, depending upon the facts? Yes, certainly, depending on the facts. I mean, the potential – the important thing to consider is whether this person in view of the crime could constitute a danger to the community. And here he had a knife. We know that. Here we had an individual using a knife against a living creature. Poor poodle. It's still something that's alive, even if it's not a person. Right. I mean, that was – and that's the board's rationale. I mean, I think – and I want to get back to the Frentescu analysis because I think that's important. In cases where this Court has found either legal error or abuse of discretion in the board's analysis of the particularly serious crime, it's because the board somehow deviated from Frentescu. What about the argument that was made here, which was that the board – IJ and the board did not take into account the circumstances, which was essentially you had a fairly obviously mentally ill person who said he was having a seizure at the time. Well, the board's – the language in the board's decision clearly does show, and the immigration judge as well, both considered the immigration – both considered the Petitioner's testimony. They said, we acknowledge Petitioner's testimony that he claims he was only giving the dog a bath. Now, the board – there's a board decision called Matter of LS, which is at 22 INN decision 651. And I think that decision is helpful in that it specifies when we're talking about a particularly serious crime determination, we don't go back and relitigate guilt or innocence. We're looking at the surrounding circumstances, but an individual can't come into immigration court and say, well, you know, I pled guilty to this offense, but in fact, I really didn't do it. But he didn't actually plead guilty to killing the dog. He pled guilty to a series of things. Right. Which are linked by Ann. And killing. And my understanding is that in California and elsewhere, that is not – doesn't mean each subsection. It means one subsection, one subcategory. Well, the statute is linked by Ann. I know it is, but that there's – I'm fairly certain definitive case law is saying that you can allege it that way but try it discreetly. Well, in any event, I don't think there's any question that the dog died. I mean, Petitioner acknowledges that fact in this case. Petitioner also acknowledges that his action, he says it was giving the dog a bath, resulted in the dog's skin being peeled off. So even if he doesn't say that he was using a knife, he acknowledges that the dog was killed. I was just responding to your point that you look at the conviction, and the conviction here does not resolve. Okay. Your Honor, I only have a few minutes left. I just briefly want to point out some of the evidence on – with respect to the torture claim. The government submitted quite a bit of evidence in this case which I think amply supports the Board's determination that Petitioner in this case is not likely to be tortured in Mexico. First of all – Well, it doesn't – I mean, it seems to me that with regard to whether he's likely to be tortured, I don't know about that. The question of whether he's likely to be tortured with government acquiescence, your record is stronger, it seems to me, as to whether he's likely to be tortured, i.e., by having been attacked many times in the past. Right. And that's the operative question, is whether he's likely to be tortured with government acquiescence. I think this Court's decision in Castro-Martinez, while it didn't address Cat, it was an asylum and withholding case, is nevertheless – is nevertheless important in this respect in all the evidence that it notes. The same evidence is – was presented in this case discussing changing attitudes over the last decade, anti-discrimination laws which were passed in 2003 which made it illegal for the first time to discriminate against people based on their sexual orientation, Mexico City's decision to legalize gay marriage, gay adoption. All of these things have happened in the last several years since Petitioner. And he was asked about that and said, yes, but that doesn't affect the way people treat us on the street. Right. That was his testimony. Granted, that was his testimony from the perspective of someone that has been in the United States for 10 years. So I think – I mean, the other evidence briefly to point to is what the government submitted at 944 through 1079. That's, I think, pretty useful evidence in discussing changing conditions in Mexico. I see my time has expired. Thank you very much. The subject is, of course, for the questions. We'll give you one more rebuttal. Thank you. Between the years 2002 and 2007, I thought more than 1,000 people were killed in Mexico in homophobic crimes, making it the second-highest total in the world behind Brazil. AR-389. In 2010, according to the country report produced by the Department of State, there were more than 1,100 complaints of cruel, degrading, or torturous treatment. You could balance this evidence either way. And if that – if competing evidence was all we had here, then the Petitioner probably wouldn't meet his burden of cat. What we have here that's different is past torture. What we have here that's different is past violent rapes. What we have here that's different is a Petitioner who, when you see him on the street, he looks different. He stands out. He's going to attract attention. He is going to be more likely to be targeted either by groups of private actors or by the police, which he has been in the past. Again, we could balance the evidence, and we could – I could point to our evidence, the government points to their evidence, but in the end, we have a Petitioner who – I'm tired of honestly reading this AR because it makes me sick to my stomach. If we were selecting immigrants based upon their merit or desirability, my client would be left out. He is not well-educated. He's going to have to have medical attention and medication for the rest of his life. He is the least of these. But that's why withholding and CAT are mandatory, where the evidence clearly demonstrates that torture, persecution, and harm are likely to be – likely to happen in the future. Thank you, Your Honors. Thank you very much. I thank both of you for your arguments. The case of Madrid v. Holder is submitted, and we are adjourned. Thank you. All rise. Court is adjourned. Thank you.
judges: Zouhary, Wallace, Berzon